UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6166-CR-ROETTGER

MAGISTRATE JUDGE SNOW

UNITED STATES OF AMERICA,  :

     Plaintiff,          :

v.                        :

FAY JOHNSON,         :

     Defendant.        :
_____/



## UNOPPOSED OBJECTION TO
## PRE-SENTENCE INVESTIGATION REPORT

COMES NOW the defendant, Fay Johnson, by and through her undersigned counsel, and files this objection, which is unopposed by the government, to the P.S.I. compiled in the instant matter and as grounds in support thereof states:

Page 5, paragraph 14 of the P.S.I. states that the offense involved more than minimal planning. An increase for "more than minimal planning" is unwarranted.

U. S. S. G. § 1B1.1(f) sets forth, three circumstances under which more than minimal planning exists: (1) if the defendant undertook "more planning than is typical for commission of the offense in a simple form;" (2) if "significant steps were taken to conceal the offense"; or (3) "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune," *United States v. Tapia*, 59 F.3d 1137, 1144 (11th Cir. 1995).

1

Prior to her father Sherman Council's death, Ms. Johnson was appointed guardian ad litem and had power of attorney over her father's financial affairs. His social security checks were deposited into her Broward school credit union account. As the P.S.I. indicates, Ms Johnson continued to receive her father's social security checks after his death. She continued to deposit them into her account and later changed this to a direct deposit. The defendant's continued receipt of benefits and deposits into her account became illegal after her father's death and the defendant so acknowledged this by her entrance of a guilty plea. However, the defendant did nothing that would constitute more than minimal planning. In fact, the defendant did no planning at all. She simply continued to allow the funds to be deposited into the account. Her actions were essentially no different before her father's death than after.

The first criteria to assess in determining the applicability of § 2B1.1(b)(4)(A) is whether the defendant undertook "more planning than is typical for commission of the offense in a simple form." In the instant case, nothing less could have been done. Merely allowing money to be deposited into one's account and drafting checks therefrom is absolutely the simplest form in which the offense could be committed. If anything less was done there would be no crime. *United States v. Cropper*, 42 F.3d 755, 758 (2nd Cir. 1994) relates that this enhancement is usually applied to sophisticated crimes. This is hardly the scenario in the instant case. In the case at hand no sophisticated plan or elaborate scheme or complex, complicated well disguised ruse exists. The facts of this case do not support this first criteria for enhancement.

The second tenet to be analyzed is whether "significant affirmative steps were taken to conceal the offense." U.S.S.G. § 1B1.1f. It is clear no steps were taken to conceal the offense, much less significant affirmative ones. The only act Ms. Johnson undertook was to change the receipt of

2

the benefits to direct deposit into her account. Not only is this not an act of concealment, it suggests an openness about her receipt of the funds.

In *United States v. Werlinger*, 894 F.2d 1015 (8th Cir. 1990) the court observed that "It is difficult to imagine an embezzler who does not take some affirmative steps to conceal her wrong doing. Concealment is crucial to the very success of the crime." *Id.* at 1017. Yet as we look to the facts of the instant offense we see virtually no concealment undertaken. Nothing was undertaken to disguise the continuing deposits into the account. Further, nothing was done to hide the fact that the defendant was writing checks out of the account. What we do see is a failure to take affirmative steps to disclose that social security funds were being distributed after her father's death. This falls well short of the standard required for enhancement. Neither does making numerous checking withdrawals amount to any form of concealment. This issue was addressed in a check kiting scheme in *United States v. Bean*, 18 F.3d 1367 (7th Cir. 1994) wherein the court explained "writing multiple checks does not conceal the fraud; it is the means by which the fraud succeeds." *Id.* at 1370. In remanding the case for reconsideration and disallowing multiple check drafts to be the basis for § 2B1.1 (b)(4)(A) enhancement, the Seventh Circuit directed the District Court to "compare the circumstances of this case with other fraud offenses, and not only with frauds committed by kiting checks. The court also must exclude factors already taken into account in the base offense guideline. Otherwise there would be double counting." *Id.* We must therefore do the same and when we compare the instant case to other fraud cases we see an offense committed in simplistic fashion accompanied by no concealment.

The third circumstance wherein an enhancement under § 2B1.1(b)(4)(A) might apply is "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely

3

opportune." The guidelines attempt to give guidance as to how this principle might be applied factually. The guidelines specify that in an embezzlement "a single taking accomplished by a false book entry would constitute only minimal planning," but several instances of taking money each accompanied by fake entries, "would constitute more than minimal planning." Although the guidelines do not define the term "several," Webster's New Collegiate Dictionary (1975), defines "several" as "separate and distinct from one another." Although the Eleventh Circuit has never explicitly defined several as used in this guideline, it has implicitly applied Webster's definition in deciding the more than minimal planning issue in theft and fraud cases. *See United States v. Garcia*, 13 F.3d 1464, 1471 (11th Cir. 1994) (theft ring engaged in repeated acts over a period of time as they frequently searched for tractor trailers loaded with seafood, stole several tractor trailers, hid them in a warehouse, and redistributed stolen merchandise); *United States v. Scroggins*, 880 F.2d 1204, 1213 (11th Cir. 1984) (nineteen separate and distinct postal thefts by defendant during two month period); *see also United States v. Cannon*, 41 F.3d 1462, 1467 (11th Cir. 1995) (conspiracy involving numerous improperly performed defense contracts spanning a four and a half year period). The separateness and distinctness of these acts of theft and fraud distinguish such cases from the instant one. Here the defendant merely allowed funds to be distributed in one continuous act of theft. There was nothing separate and distinct about each individual disbursement. Assuming arguendo that this might be considered repeated acts over time, it is clear that each instance was purely opportune. If these instances were purely opportune then more than minimal planning would not apply. *United States v. Mullins*, 996 F.2d 1170 (11th Cir. 1993) is illustrative of those types of cases that are not purely opportune. *Mullins* stated:

4

> The record does not show the unlawful conduct to have been "purely opportune." Acquiring the vehicles in question required certain acts–including identifying a dealer who had the car he was looking for, obtaining a price, and taking delivery of the car. *Mullins* took these affirmative, premeditated steps before he committed the offense–before he took the cars across the state lines with an intent to deprive the Alabama dealerships of their possessory or ownership rights; therefore, he engaged in more than minimal planning. *See United State v. Barndt*, 913 F.2d 201, 204-05 (5th Cir. 1990)(defendant engaged in more than minimal planning when he took discrete steps to position himself for an unlawful sale of government property (copper wire), including acquiring cutting tools, cutting the wire, loading the wire into his vehicle, seeking a buyer, and transporting the wire the buyer).

> Since there was evidence of repeated violations and discrete, premeditated acts prior to commission of the offense, the district court's finding that *Mullins'* offense involved more than minimal planning was not clearly erroneous. *See United States v. Scroggins*, 880 F.2d 1204m 1215 (11th Cir. 1989)(a finding of more than minimal planning is reviewed for clear error), cert. denied, 494 U. S. 1083, 110S. Ct. 1816, 108 L. Ed.2d 946 (1990). *Id.* at 1171.

What we see present in the *Mullins* case is completely absent in the instant case. In *Mullins* there were repeated violations and discrete, premeditated acts prior to commission of the offense. *Id.* at 1171. In the case at bar, the defendant was a joint account holder with her father years before her father died. She did nothing to position herself to receive these funds. She was already in position , prior to any illegal activity. Her receipt of the funds was fortuitously created by her father's death, not by her actions at all. There were absolutely no premeditated acts prior to the commission of the offense. There was no manipulation of accounts. There was no falsifying of documents. There was no solicitation of persons or entities. The commission of this offense was in the most quintessential sense, purely opportune.

5

In conclusion, it would be easy to adopt a pro forma approach whereby the conclusion would be: it's a fraud/theft cause, so more than minimal planning applies. However, this is very clearly one fraud/theft case where it does not. There was no more planning than is typical for commission of the offense in a simple form, no significant steps were taken to conceal the offense and acts of disbursement over time were purely opportune. Accordingly, the defendant requests this court sustain the defendant's objection to the two level enhancement for more than minimal planning.

Assistant United States Attorney Roger Stefin has been contacted and states that he does not oppose the objection.

WHEREFORE, the defendant requests that this court sustain the defendant's objection to the "more than minimal planning" enhancement.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By:_____
Timothy M. Day
Assistant
Federal Public Defender
Attorney for Defendant
Florida Bar No. 360325
101 N.E. 3rd Avenue, Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436 / 356-7556 (Fax)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the aforementioned motion was mailed on this ⏂

day of January, 2001, to Roger Stefin, Assistant United States Attorney at 299 East Broward

Boulevard, Fort Lauderdale, Florida 33301 and Tracey Webb United States Probation Office, 299

East Broward Boulevard, Fort Lauderdale, Florida 33301.

Timothy Day